LANDRY FORTIN AND ALICE FORTIN *vs.* LEAH WILENSKY.

York. Opinion, May 19, 1947.

*Lausier & Donahue,* for complainants.

*Waterhouse, Spencer & Carroll,* for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

FELLOWS, J. This is a bill in equity, brought in Superior Court for York County, to enforce claim for specific performance of an alleged contract to make lease of certain real estate in Biddeford. The case comes to the Law Court on appeal from a final decree which dismissed the bill. This final decree is affirmed.

The evidence, which was uncertain and very conflicting, apparently discloses that Landry Fortin and his wife, Alice Fortin, are tenants at will of defendant, Leah Wilensky, and in possession of premises located at 22 Alfred Street in the City of Biddeford. Since 1932 they have been in the grocery business there, and at first had a lease from the then owner Kendall. After the expiration of the Kendall lease in 1941 the building was sold to this defendant, and the plaintiffs became her tenants at will at a monthly rental of fifty dollars. From February 1, 1943 the Fortins paid to the defendant seventy-five dollars per month, as rent for the store, and this rental continued until December 1945.

Sometime in the fall of 1945 Mr. and Mrs. Fortin said they

desired to obtain a lease of the premises, and they were informed by the defendant that they could have a five year lease, and that in the future the rent would be ninety dollars. The plaintiffs had a lease prepared by Mr. Harvey, their attorney, in December 1945 and brought it to the defendant for her approval. She refused to sign because it contained a provision for annual renewals instead of a five year provision. Beginning January 1, 1946 the plaintiffs voluntarily commenced to pay the defendant the said monthly sum of ninety dollars as rent, but they did not prepare any other form of lease to submit to the defendant.

In February 1946 the defendant, Leah Wilensky, had a lease prepared by Attorney Donahue, which lease provided for a term of five years beginning on March 1, 1946, with a five year renewal privilege, at the monthly rental of ninety dollars. This proposed lease was submitted by the defendant to the plaintiffs for their approval. The defendant says that the two copies were submitted by her to the plaintiffs in February. The plaintiffs say that she turned the two copies over, but they are not sure of the time when. Plaintiff, Alice Fortin, testified that Mrs. Wilensky delivered to the plaintiffs the drafts of the lease, and later came into the store and asked if the leases were signed, and "I said we will sign them and we will talk them over" and that about "three weeks after" or "maybe four weeks," Mrs. Fortin took the signed leases in to Mrs. Wilensky. On the other hand, the defendant, Mrs. Wilensky, says that she delivered the drafts of lease in February and that she called several times to ask if the lease was signed and "they say no, they found a flaw in the lease. I say put it on a piece of paper and I go back to the lawyer and fix it up the way you want it." Mrs. Wilensky says she waited nearly four months before they brought it in. Meanwhile, the Singer Sewing Machine Company offered a larger amount as rent, and the defendant Wilensky says she discussed the matter with plaintiffs and then went to Attorney Donahue, who advised her that the Fortins had waited too long, and for her to go ahead and lease to the Sewing Machine

Company. It is argued by the defendant that the plaintiffs did not intend to sign the five year lease prepared by Mrs. Wilensky, and held it until they learned of her negotiations with the Singer Company. The plaintiffs deny this, and say that the rent was paid to July 1st by the plaintiffs to the defendant, and the plaintiffs' checks for ninety dollars were accepted and cashed by the defendant. The plaintiffs also say that "the payment by the plaintiffs of a monthly rental of ninety dollars, an increase of fifteen dollars" over the 1945 rental, was consideration for the giving of a lease.

The defendant served a notice on the plaintiffs to quit, dated July 17, 1946, stating that the tenancy would expire on September 1, 1946. Interlocutory decree on plaintiffs' motion for temporary injunction was filed August 13, 1946, which decree provided "if an action of Forcible Entry and Detainer is brought, that the said action shall be allowed to stand continued pending final hearing on this bill."

The sitting justice in dismissing the bill stated in his decree:

"The plaintiffs in this action were lessees of certain property owned by the defendant, for which they paid ninety dollars ($90.00) a month rent.

The defendant at the request of the plaintiffs and without consideration agreed to give to said plaintiffs a written lease of said premises for a certain period of years. First the plaintiffs had a lease prepared, which was not satisfactory to the defendant; whereupon the defendant had another lease prepared by her own counsel. This lease was presented to the lessees, the plaintiffs in this action, for their signatures, with the understanding that it would be signed and returned to the lessor, the defendant in this action, for her signature.

From all the evidence, it would appear that reasonable time was of the essence of this agreement. However, the plaintiffs in this action did not sign the lease for some weeks.

In the meantime the defendant in this action had an opportunity to lease said premises at a much larger rent to other parties, and negotiated with said parties for said lease.

Eventually the plaintiffs in this action did sign the lease and took the lease to the defendant, but the defendant then refused to sign the lease, and this action was brought for the purpose of enforcing this agreement to give a lease.

THE COURT FINDS that there was no consideration for the agreement to give a lease; that time was of the essence of the agreement, and that the plaintiffs in this action did not act seasonably, nor until the defendant had already begun arrangements to lease the premises to other parties."

When a cause in equity comes up on appeal it is, of course, the duty of the Law Court to determine whether, upon the record, the decree of the Court below was correct; but the decision of the single justice, on matters of fact, will not be reversed unless clearly erroneous, and the burden of showing such error falls upon the appellant. *Whitehouse Equity* (1st Ed.) 653, 655, Pars. 628, 631; *Young* v. *Witham,* 75 Me., 536; *King* v. *Metropolitan,* 127 Me., 543, 142 A., 780; *Brickley* v. *Leonard,* 129 Me., 94, 149 A., 833; *Cloutier* v. *Giguere,* 130 Me., 508, 152 A., 853; *Savings Institution* v. *Johnston,* 133 Me., 445, 180 A., 322.

Here, the plaintiffs contend that the justice below was clearly in error when he made the foregoing findings of fact.

First, let us consider the finding of "no consideration for the agreement to give a lease." It was in the fall of 1945 that the plaintiffs asked for a lease and were told by defendant that they could have a five year lease and that future rental would be ninety dollars. The plaintiffs prepared an annual lease with renewals, which defendant declined to sign. The plaintiffs, on January 1, 1946, commenced to pay the defendant ninety dollars. There was no existing lease. The plaintiffs voluntarily paid fifteen dollars more because the defendant desired it, and

the plaintiffs wished to stay. It is true that the landlord cannot compel a tenant at will to pay increased rent without termination of the tenancy. The amount of rent may, however, be changed by mutual consent. *Ryan* v. *Cogan Company*, 130 Me., 88, 90, 153 A., 815. The rent of this building here had been changed several times previously, and by mutual consent. The inference could easily be drawn by the justice hearing the case that the rental was ninety dollars, and mutually agreed upon. One important detail of the leasehold was not agreed upon. The plaintiffs desired an annual lease; the defendant a five year term. The plaintiffs were plainly opposed to being held to a long term. The form of lease made by the plaintiffs was not approved by the defendant, and the form of lease made by the defendant was not seasonably signed by the plaintiffs. It was signed by the plaintiffs after weeks of delay, and only after negotiations had commenced between defendant and other parties. The justice below could properly find, as he did find, that the rent was ninety dollars and that there was no consideration. The payment of the increased rent followed a refusal by the defendant to execute a lease on the terms desired by the plaintiffs, and before any other draft of lease was submitted by either of the parties to the other. The payment of the increase of fifteen dollars would not necessarily be regarded as made in contemplation of the refused lease made by Attorney Harvey, or of the lease to be afterwards drafted by Attorney Donahue. There is no evidence that clearly indicates that either of the parties considered this increase of rent to be legal consideration for the making of a new and written contract. It certainly was not so understood by both parties.

The bill alleges that, in addition to the payment by the plaintiffs of an increase in rent, there was an expansion of business "in reliance upon the promises of the defendant," but there is no evidence to support such a contention. The plaintiffs were already in possession of the premises and there was no change of business shown.

The result would probably have been the same however if the evidence had authorized the justice to find a consideration, because details were not agreed upon, and an agreement to make an agreement is not always enforcible. As our court has said, "The proof must show the terms of the contract clearly, definitely and conclusively . . . the agreement must be concluded, unambiguous, and proved to the satisfaction of the court." *Bennett* v. *Dyer*, 89 Me., 17, 22, 35 A., 1004, 1005; *Woodbury* v. *Gardner*, 77 Me., 68, 71. The authorities recognize that an oral agreement to execute a written lease may be specifically enforced, in a proper case, where it has been partly performed; but mere negotiations looking toward a written lease, that is to be agreed upon, have no binding force on either party. Pomeroy's *Specific Performance of Contracts* (3d ed.) 350, Par. 136; 58 Corpus Juris, 990, Pars. 178-227; 49 Am. Jur. "Specific Performance" 142, Pars. 121, 122, 124.

This case is easily distinguished from the cases where the terms of the tenancy have been fully agreed upon by the parties, and the tenant has entered into possession at the request, or implied request, of the landlord, and where there has been a substantial change in circumstances on the part of the tenant.

The court below also stated in the decree "that the plaintiffs in this action did not act seasonably." It is a well established doctrine that when no time is specified, a reasonable time is implied. What a reasonable time is may be a mixed question of law and fact, depending on the circumstances of the particular case, and whether the facts and circumstances are in dispute. At law, time is of the essence of a contract, but in equity it depends upon the circumstances. *Snowman* v. *Harford*, 55 Me., 197, 199; *Fisk* v. *Williams*, 75 Me., 217; *Telegraphone Corp.* v. *Telegraphone Co.*, 103 Me., 444, 69 A., 767; *Dalton* v. *Callahan*, 122 Me., 178, 187, 119 A., 380; *Colbath* v. *Stebbins Lumber Co.*, 127 Me., 406, 144 A., 1.

If the plaintiffs had acted promptly and had signed the lease

prepared for the defendant by Attorney Donahue, and had as promptly returned it, they probably would now have a lease of the store. They did not desire a five year lease, because they had indicated that they desired an annual one. Delay, under the circumstances here, could cause injury or prejudice to the rights of the defendant. The tenants had no right to wait for a favorable turn of events before making their election to sign, on the possible theory that if values increased they would sign and if values declined, or another rent became available, they would refuse. Under such a situation equity would be lending its assistance to the carrying out of an unjust and inequitable arrangement. A decree of specific performance can never be claimed as a matter of right. A bill in equity for this purpose is always addressed to the sound discretion of the court under the rules and principles of equity jurisdiction. *Whitehouse Equity* (1st Ed.), 94, Par. 83; 49 Am. Jur., 89, 92, 93, Pars. 73, 75, 76; *Brown* v. *Boston & Maine R. R.*, 106 Me., 248, 255, 76 A., 692.

In this case the record shows that credibility of witnesses was most important. The sitting justice had the advantage of exercising his trained powers of observation. He could see the witnesses and hear their testimony. This court, on appeal, can only read the printed page that gives no information of those visible details that may have indicated at the hearing where the truth was. All that the Law Court can say is, that the record does not show the decree of the court below to be incorrect, or that the findings of fact were clearly erroneous. *Snow* v. *Gould*, 119 Me., 318, 321, 111 A., 337.

> *Appeal dismissed.*
> *Decree of Court below affirmed.*