In re William J. NAGLE III, Bankrupt.

BKP ASSOCIATES, INC., Plaintiff,

v.

Jason MONZACK, Trustee in
Bankruptcy, Defendant.

Bankruptcy No. 79–178.

United States Bankruptcy Court,
D. Rhode Island.

March 1, 1982.

Z. Hershel Smith, DiSandro, Smith & Associates, Providence, R. I., for plaintiff.

Jason D. Monzack, Halpert & Scoliard, Providence, R. I., trustee.

## OPINION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Plaintiff BKP Associates, Inc.'s complaint to reclaim from the Trustee

a portion of the surplus fund remaining after a foreclosure sale. BKP claims to be the equitable owner of $3,000 on the basis of a purchase and sale agreement with the Debtor. The Trustee objects to BKP's claim on three grounds: (1) that BKP was in breach of the agreement on which it now relies, (2) that BKP was not a ready, willing and able buyer, and (3) that the $3,000 in question does not represent equity in the real estate because the total encumbrances exceed the amount realized at foreclosure.

The relevant facts are as follows: On February 2, 1978, the Plaintiff, BKP Associates, Inc., entered into an agreement to purchase a house owned by William Nagle (the Debtor) and his sister, Patricia Nagle. At that time, BKP paid a $1,000 deposit, which was held in escrow by James Hyman, Esq., attorney for the Nagles. The purchase and sale agreement does not state that time was of the essence with respect to the transfer of legal title, but does provide that the closing and exchange of consideration "should" take place by February 24, 1978. (Plaintiff's Exh. 1) The closing was not held before February 24, 1978.

BKP obtained financing on March 21, 1978 and, with the Debtor's consent, scheduled the closing for April 21, 1978. On March 15, 1978, however, Newport National Bank, a creditor of William Nagle, obtained an order from the Rhode Island Superior Court restraining any conveyance by the Debtor or his sister. The bank also filed a lis pendens with respect to the property in question.[1] (Defendant's Exh. F and G) After these events, Attorney Hyman negotiated a settlement with all interested creditors, including the bank, and this enabled the closing to proceed.

At the closing, BKP tendered a check for the purchase price ($33,000), less the down payment and various adjustments. Problems developed when Attorney Hyman refused to release the down payment he held in escrow (which should have been included as part of the purchase proceeds). He was contending that the original contract was breached when BKP was not ready to close on February 24, 1978, and that consequently said deposit had been forfeited to the Debtor.[2] Newport National Bank did not accept Hyman's position and halted the closing.

On June 1, 1978, the Savings Bank of Newport foreclosed on its first mortgage and sold the property for thirty-six thousand dollars ($36,000). William Nagle filed a Chapter 7 petition on June 7, 1979. The surplus from the foreclosure sale (which includes the $3,000 claimed by BKP) and the deposit ($1,000) are in the possession of the Trustee, pending the outcome of this litigation.

BKP maintains that it entered into a valid purchase and sale agreement and was a ready, willing, and able buyer at the April 21, 1978 closing. Further, BKP attributes the failure of the closing solely to Hyman's refusal to relinquish the $1,000 deposit, and contends that it was the equitable owner of the property at the time of the foreclosure sale and is therefore entitled to $3,000, i.e., the difference between the purchase price under the purchase sale contract ($33,000) and the amount realized from the foreclosure ($36,000).

The Trustee argues that the purchase and sale agreement (and BKP's rights) had expired because the closing was not held on or before February 24, 1978. Since the contract does not provide that time is of the essence, the Trustee has the burden of establishing, through evidence of the intent of the parties, the urgency of holding the closing on February 24, 1978. See *Jakober v. E. M. Loew's Capitol Theatre, Inc. et al*, 107 R.I. 104, 265 A.2d 429 (1970); *Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 228 A.2d 851 (1967); *Sal's Furniture Co., Inc. v. Samuel Peterson*, 86 R.I. 203, 208, 133 A.2d 770, 773

---

1. The lis pendens was filed and the restraining order obtained in connection with the bank's suit to remove Patricia's name from the legal title. The bank contends that the Debtor's conveyance to his sister was fraudulent.

2. Hyman testified that it was his intention to retain a portion of the down payment as payment for legal services.

(1957). The evidence does not support the Trustee's position on this issue. The Debtor's willingness to extend the closing date, with the cooperation of all interested parties, leaves no room for the inference that time was of the essence, and I find as a fact that it was not the intent of the parties that the closing should be held by February 24, 1978 or not at all. The Court is satisfied that the two-month extension was reasonable in the circumstances of this case.

The Trustee also argues that BKP was not a ready, willing, and able buyer because it did not tender sufficient cash to comply with the terms of the purchase and sale agreement. But this argument depends on the Trustee's prior contention that the contract was breached because the closing was not held by February 24 and that the deposit had been forfeited. Since it has already been determined that the delay did not constitute a material breach by BKP, the deposit should have been included in the amount tendered at the closing, and if Hyman released these funds (as he should have), the amount tendered was sufficient. (Tr. pp. 95–7, 103–4, 108, 112, 118).

Neither does the Plaintiff's tender of a personal check rather than a cashier's check, or cash as specified in the contract, constitute a material breach, as alleged by the Trustee. In this case, the check is the equivalent of cash.[3]

Finally, the Trustee maintains that the Plaintiff is not entitled to the $3,000 because the proceeds from the foreclosure sale do not represent "equity" in the real estate. This contention is unsupported, because the Trustee includes two items in his calculations which are not liens on the property (see Defendant's Memorandum at pp. 7–8). Newport National's claim (approximately $7,000), is evidenced by a lis pendens, which is not a lien on the property. (Defendant's Exh. G). See also R.I. Gen.

Laws 9–4–9; *George et al v. Oakhurst Realty, Inc. et al,* R.I., 414 A.2d 471, 474 (1980). Similarly, the broker's commission[4] is not a lien, and should not have been included in the calculations. The amount tendered by BKP at the closing[5] was sufficient to pay all valid liens. (Tr. pp. 103–4; Defendant's Exh. E).

Accordingly, BKP is entitled to $3,000, which is the difference between the price under the purchase and sale agreement ($33,000), and the amount realized at foreclosure ($36,000).

The Court makes no ruling as to the disposition of the $1,000 deposit. Neither party has adequately addressed the question as to ownership of that item, which should be held by the Trustee until the issue is either settled, or briefed and determined.

In the meantime, the Trustee is ordered to distribute $3,000 in accordance with this opinion.

---

3. BKP's bank statement for the period in question demonstrates that the Plaintiff's checking account balance was sufficient to cover the check on the date of the closing. (Plaintiff's Exh. 6).

4. The purchase and sale agreement required the seller to pay the broker. (See Plaintiff's Exh. 1; Tr. p. 98).

5. BKP's check, the $1,000 deposit, and additional funds provided by the mortgagee bank.