In re William F. LAMARRE, Debtor.

William F. LAMARRE, Plaintiff,

v.

CITY OF BIDDEFORD, Canal National Bank, Cadorettes Hardware, Murray, Plumb & Murray, P.A., St. Andres Federal Credit Union, U.S.A. Department of the Treasury, Internal Revenue Service, Defendants.

Bankruptcy No. 281-00011.
Adv. No. 283-0185.

United States Bankruptcy Court,
D. Maine.

Oct. 28, 1983.

Clarke Hambley, Jr., Murray, Plumb and Murray, Portland, Me., for plaintiff.

John A. Bell, LaFountain & Boulos, Biddeford, Me., for defendants City of Biddeford and St. Andres Fed. Cred. Union.

Donald A. Kopp, Portland, Me., for defendant Canal Nat. Bank.

Peter S. Plumb, Murray, Plumb & Murray, Portland, Me., for defendant Murray, Plumb and Murray.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., for defendant, I.R.S.

MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The debtor, William Lamarre, seeks specific performance of a contract he allegedly made with the City of Biddeford. During the spring of 1982, while Lamarre was under the protection of Chapter 13 of the

Bankruptcy Code,[1] these parties negotiated the sale to the city of real property owned by the debtor. While the debtor contends that he unconditionally accepted the city's offer to purchase the real estate, the city argues that the bargaining between the parties never rose to the level of contract and that if a contract did exist, the debtor's delay in performing discharged the city's obligations. The court concludes that the city breached an existing contract with debtor Lamarre.

The parties have stipulated to the essential facts. For some time, the City of Biddeford had been interested in acquiring Lamarre's property and razing the buildings as part of a waterfront redevelopment plan. On February 2, 1982, the defendant city through its attorney offered in writing to buy the debtor's waterfront real estate at White's Wharf, Biddeford, Maine, for $10,000—less outstanding real estate taxes. Although Lamarre rejected the February 1982 offer, negotiations continued. On March 3, 1982, the city in a letter from its attorney offered to buy the property for $10,000 plus an abatement of the 1981 real estate taxes. The letter also noted that the sale could not be consummated "until on or about July 7, 1982." After a meeting with the Chapter 13 trustee and counsel for a major secured creditor, debtor's attorney sent the following letter, dated May 17, to the city's attorney:

> After my meeting with the Chapter 13 trustee ... and the attorney for Canal National Bank I am authorized by William Lamarre, ... [the trustee] and Canal Bank to accept the town of Biddeford's proposal to buy William Lamarre's White (sic) Wharf property for $10,000.00 net of all municipal taxes. This accept-

ance is conditioned upon the Bankruptcy Court's approval of the foregoing terms of sale. I will be seeking Bankruptcy Court approval within the next several days. Thank you for your assistance.

After the May 17 letter, the parties did not communicate until sometime after July 1. Debtor's counsel recalls two telephone conversations with the city's attorney between July 1, 1982, and October 5, 1982. Debtor's attorney asserts that while these conversations concerned Bankruptcy Court approval of the sale, at no time did the city's attorney insist that approval be secured by a certain date. The city's attorney does not remember these conversations. However, on August 9, 1982, the city's attorney wrote to the debtor's attorney as follows:

> I would appreciate hearing from you as to whether or not you propose to accept the City's offer submitted several months ago in reference to the Lamarre property, White's Wharf, Biddeford, Maine.

The city council at a meeting on October 5, 1982, voted to:

> rescind the previous action of purchasing the Lamarre property located on White's Wharf and to commence condemnation proceeding in accordance with State Law.

Prior to voting to condemn Lamarre's property, the council did not seek relief from the automatic stay imposed by section 362 of the Bankruptcy Code.[2]

■ The issues are whether the parties formed a contract and, if they did, whether the city breached that contract. To create a contract, an acceptance must be unconditional. *University of Maine v. Pratt,* 120 Me. 7, 112 A. 673 (1921); *Howard v. Maine Industrial School for Girls,* 78 Me. 230, 3 A.

---

1. Chapter 13 deals with adjustment of debts of individuals with regular income. *See also* 11 U.S.C. § .101(24).

2. Section 362, as pertinent, provides:
   (a) a petition filed under ... this title ... operates as a stay, applicable to all entities, of—

   .  .  .  .  .

   (3) any act to obtain possession of property of the estate or of property from the estate;

"Entity" includes governmental units such as municipalities. 11 U.S.C.A. § 101(14) and (21).

The action of the city council was probably a violation of the automatic stay and, therefore, void. *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re Eisenstein,* 7 B.R. 683, 3 C.B.C.2d (MB) 440 (Bkrtcy.E.D.N.Y. 1980) (actions in violation of stay are void even where there is no actual notice of the stay).

657 (1886). This requirement, however, does not invalidate every acceptance which contains a condition. For example, the offeree from an abundance of caution may condition his acceptance on a fact which would be implied in fact or in law from the offer. 1 S. Williston, *A Treatise on the Law of Contracts* § 78 (3d ed. 1957); *Restatement (Second) of Contracts*, § 59, comment b. Commonly this issue has arisen in real estate transactions where the offer to sell has been accepted on condition that title is marketable. Courts have determined that such an acceptance is unconditional, because good title is implied in law from the offer. *Annot.*, 16 A.L.R.3d 1424 (1967); *Morse v. Tillotson & Wolcott Co.*, 253 F. 340, 1 A.L.R. 1485 (2d Cir.1918). *See also O'Halloran v. Oechslie*, 402 A.2d 67, 70 (Me.1979) (contract exists even though purchaser's performance is conditioned on obtaining financing).

■ The evidence in this proceeding establishes that all parties knew Mr. Lamarre was under the protection of the Bankruptcy Code. The waterfront property at issue was property of the debtor's estate, 11 U.S.C.A. § 1306, and could not have been properly sold without court approval. 11 U.S.C.A. § 363(b) (1979). Since the city was aware of the bankruptcy case, the condition stated in the debtor's acceptance was one implied in the offer itself. Therefore, the acceptance was unconditional and formed a binding contract between the debtor and the City of Biddeford for the sale of the White's Wharf property. This contract existed prior to the city's August 9, 1982, letter.

■ The more troublesome issue is the effect of the debtor's three month delay in seeking Bankruptcy Court approval and consummating the sale. At law, time is of the essence in a contract. *Fortin v. Wilensky*, 142 Me. 372, 53 A.2d 266 (1947). Performance should be on the date fixed, *Allen v. Inhabitants of Cooper*, 22 Me. (9 Shep.) 133 (1842), or if no time is specified, within a reasonable time. *Fortin v. Wilensky*, 142 Me. 372, 53 A.2d 266 (1947). In contracts for the sale of real estate, however, the importance of timely performance has been modified. Time is not of the essence unless so stated or unless made so by special circumstances. *Snowman v. Harford*, 55 Me. 197 (1867); *Hull v. Sturdivant*, 46 Me. 34 (1858); *Jones v. Robbins*, 29 Me. (16 Shep.) 351 (1849); 6 Williston, *A Treatise on the Law of Contracts* § 852 (3d ed. 1962). This rule has been followed in the United States Bankruptcy Courts. *In re Nagle*, 17 B.R. 865 (Bkrtcy.R.I.1982); *In re Flannery*, 11 B.R. 974 (Bkrtcy.Pa.1981).

■ In this case the parties' contract for the sale of real estate neither made time of the essence nor specified a precise date for the sale to close. Although the March 3, 1982, offer indicated that the city could not complete the transaction before July 7, 1982, a firm date for closing was not set. Nor does the evidence show that at any time after July 7, 1982, the city demanded an imminent closing. Further, the delay in closing did not unjustly cause the city to lose the benefit of its bargain. Even if the buildings deteriorated during the three month delay, a fact which has not been established, the city intended to demolish the buildings in redeveloping the waterfront. This court, therefore, concludes that the city breached an existing contract to buy debtor Lamarre's property.

An appropriate order will be entered.