SELYA, Circuit Judge
(dissenting).
This is a hard case — hard in the sense that the law, when faithfully applied to the facts as supportably found below, requires us to grant relief to a groak-like plaintiff who scarcely seems deserving of it. But, because the court’s result-oriented response to this pleasureless predicament makes a bad situation worse, I dissent.
I see no need for a lengthy exegesis. This is a diversity case — and if I am correct in my belief that state law has been wrenched into unfamiliar contours, then the Maine Supreme Judicial Court will likely have (or find) an opportunity to set matters straight before too much time has passed. Moreover, the court below wrote an extensive opinion which, in many respects, anticipates what might now be written in dissent. Withal, the majority’s ambitious recension of the governing legal principles should not go unanswered.
The court’s opinion, as I read it, hinges on a trio of dubious conclusions. First, my brothers say, in effect, ante at 4-5, that Metropolitan’s mailing was legally sufficient to provide Medomak with due notice of the policy’s demise. I disagree. It was Metropolitan which drafted the policy and included a right to notice as a precondition to lapse. On November 7,1988, aware that Medomak was in bankruptcy and that Be-zanson, as trustee, had assumed control over the company, the defendant attempted to satisfy this promise. It botched the job, addressing the envelope to:
Bernard J. Lewis Box 4566 Portland, Maine 04112
Thus, the mailing was sent to the wrong person, at the wrong address, without providing any inkling that its contents pertained to Medomak or were business-related. Given that the defendant had earlier been (1) notified of Bezanson’s role, (2) supplied with his correct address, and (3) asked to deal with him in Medomak-related matters (an invitation to which the defendant proved amenable), the flaws seem not only fatal, but also inexcusable.[3] Indeed, because of its own conduct in corresponding on at least five occasions with Bezan-son at the address he stipulated before sending the misdirected lapse notice, the defendant is likely estopped from now claiming that it need not have forwarded the notice to him at the new address. See Koren v. Secretary of State, 574 A.2d 895, 897 (Me.1990) (a party may assert equitable estoppel when he justifiably relies to his detriment on an opposing party’s misleading conduct).
The majority strives valiantly to shift the blame, pointing out that Bezanson never completed a change-of-address form. The policy, however, was written by Metropolitan. It provided not that an insured must notify the insurer of a new address on a company form prepared for that purpose, but that the insured might do so. Other clauses in the policy make it plain that the defendant knew how to write mandatory requirements. Its failure to write one in this instance left the insured free to send word of an address change in any manner reasonably calculated to furnish adequate notice. See generally Russell v. Starr, 56 N.M. 49, 239 P.2d 735, 736 (1952) (“In the absence of statutory or policy provisions, no particular form of notice is necessary.”); Couch on Insurance 2d, supra, § 67.138. Courts, after all, are to construe insurance contracts against the drafter, who is best situated to impart clarity into the linguistic quagmire in which such contracts are all too often embedded. See, e.g., Ray v. Blue Alliance Mut. Ins. Co., 594 A.2d 1110, 1111 (Me.1991) (ambiguities in insurance policies are to be construed “strictly against the insurer").
*9 The majority is equally quick — and equally wrong — in castigating the plaintiff for not retrieving the notice, whatever mistakes were made in the mailing. See ante at 4 & n. 1. Although it is true that a bankruptcy trustee has a duty to collect the estate’s assets and that this duty encompasses an obligation to gather business correspondence received by the bankrupt, see In re Benny, 29 B.R. 754, 760-62 (N.D.Cal.1983), the duty does not extend to reviewing personal items. Indeed, the few cases which have addressed this issue are consen-tient in their concern that bankruptcy trustees had best avoid impinging upon the privacy interests that are implicated when a trustee reads a bankrupt’s personal mail. See, e.g., id. at 764-69; In re Crabtree, 37 B.R. 426, 428-29 (Bankr.E.D.Tenn.1984). The rule seems to be that “the trustee shall refrain from opening the nonbusiness mail [of the bankrupt] whenever he can practicably identify it as such by examining the information on the envelope.” Benny, 29 B.R. at 770. Here, the envelope made no reference either to Medomak or to Lewis’ corporate capacity. Hence, it strikes me as odd to intimate that the plaintiff was under an obligation to open and read what appeared to be Lewis’ personal mail.
The next conclusion that I deem problematic involves the plaintiff’s bungled attempt to cash out the policy. Unlike my brothers, see ante at 5-6, I think this fact is irrelevant. Under Maine law, a consensual cancellation of an insurance policy, like the rescission of any other contract, can be effected only by mutual agreement. See Northeast Ins. Co. v. Concord Gen. Mut. Ins. Co., 461 A.2d 1056, 1059 (Me.1983). The present case lacks the necessary element of mutuality. When Bezan-son tried to redeem the policy for its cash value in 1987, Metropolitan rebuffed his overtures. Since the defendant did not agree to Bezanson’s terms at the time the offer to cancel was made, the policy continued in force. I know of no legal theory which, in these circumstances, would permit the defendant to hold the plaintiff to his failed aspiration.
Last, and perhaps most disturbing, my brothers fashion a new rule, without a single citation to precedent in point, that an insurer’s failure to send a contractually required lapse notice will be excused unless the unnotified policyholder takes action, within a reasonable time, to restore that which he may not yet realize he has lost. This rule places the shoe on exactly the wrong foot. And in this case, moreover, application of the rule overlooks that the period of the plaintiff’s inaction cannot, as a matter of law, be classified as unreasonable. Metropolitan told Bezanson in January of 1988 that, if certain assumptions as to interest and premium rates held, the policy would lapse around November, 1988, absent payment of additional premiums. Bezanson, who could read, knew that the lapse date was uncertain, that he would eventually receive a lapse notice, and that he would then have sixty-one additional days within which to act. Lewis died on May 27, 1989, no proper notice of lapse having been transmitted in the interim. I do not see how, on these facts, and given the imprecisions in the defendant’s forecast, an appellate court can say as a matter of law that some imagined limit of temporal reasonableness was exceeded. Cf. For-tin v. Wilensky, 142 Me. 372, 53 A.2d 266, 269 (1947) (applying clear-error review to finding of judge sitting without a jury; holding that question of what constitutes a reasonable time is, ordinarily, a mixed question that depends on the facts and circumstances of a particular case).
My brothers are understandably concerned about extending coverage forever, free of charge, if an insurer neglects properly to send a required notice of lapse. See ante at 6. I share this worry, but I suggest there are three rather powerful answers to it. First, insurers can be diligent in complying with the provisions of the policies they sell. Second, to the extent allowed by law, insurers can either refuse to provide lapse notices to policyholders, or in the alternative, insert prophylactic provisions such as prescribed procedures for changing addresses. Third, whatever extraordinary remedy might be justifiable in a truly horrendous case, this is certainly not such a situation.
*10 I need go no further.[4] Believing, as I do, that the defendant was the author of its own misfortune, I would, rather than joining in an all-out effort to extricate the defendant from its self-dug hole, affirm the judgment below.
I respectfully dissent.
ORDER OF COURT
Unsuccessful plaintiff has filed a petition for rehearing, the principal thesis of which is that the majority opinion, hereinafter the court, erred in “ignoring and trampling on accepted rules of appellate procedure” by adopting contentions advanced by defendant appellant that had not been made below. We need not reach the merits of this contention or why plaintiff did not proffer before what he would now add; it is moot in any event. The court rested its decision on two grounds; the first, as to which plaintiff’s procedural complaint is now addressed; the second, and final one, as to which it does not apply. The court’s ruling that defendant’s failure to send a proper notice of lapse extended the policy indefinitely, thus ending the case.
For confirmation that this issue was in no ways new we have plaintiff’s own words.
[T]he issues were reduced to three: ...
3) failure to give the notice did not extend the policy for an indefinite time.
The matters counsel states, in order to comply with our rule, to be of “exceptional importance,” are not even relevant to the court’s final decision.
The petition for rehearing by the panel is denied.*

. The suggestion that the defendant should be excused from acting upon information contained in its own records because it was “doing business by computers with minimum hand work," ante at 5, cannot be taken seriously. The fact that an insurer is a large corporation, and computerized, does not absolve it from recording information properly, from complying with its contracts, or from the usual rules of respondeat superior. Moreover, that a corporation has sophisticated technology at the ready eliminates rather than produces any seeming unfairness in holding it to knowledge of what a search of its internal records would easily have revealed.

. I do not think it useful to deal here with the defendant’s argument that the policy was “deemed rejected,” 11 U.S.C. § 365(d)(1), because it was not affirmatively accepted by the trustee within sixty days after the order for bankruptcy relief. Suffice it to say that my thoughts on this subject are along the same lines as intimated in the court’s opinion, ante at 7.

 Judge Selya, though continuing to believe that the court reached an erroneous result, see ante (Selya, J., dissenting), agrees with the procedural analysis contained in this order.