STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-225

DENISE E. PELLETIER, f/k/a
DENISE E. NOEL,

        Plaintiff

    v.

**ORDER**

RENE D. NOEL, JR., et al.,

        Defendants

This case come before the Court on Plaintiff Denise E. Pelletier's Motion for Summary Judgment, and on Defendants Rene D. Noel, Jr., Paul D. Noel, Michael D. Noel and Laurie Noel Todd's Motion for Partial Summary Judgment and Motion to Dismiss.

## FACTS

When Rene D. Noel, Sr. died on September 29, 1997, he had been married to Plaintiff Denise Pelletier (Plaintiff) for almost two years. Mr. Noel, Sr.'s four adult children, Rene, Jr., Paul, Michael, and Laurie Noel Todd (Defendants), challenged the terms of their father's will, arguing that Plaintiff interfered with their expectancy and exerted undue influence over their father. In September 2002, with the Defendants' suits against Plaintiff pending in both Probate and Superior Courts, Plaintiff and Defendants agreed to a settlement. Under its terms, Plaintiff would deed title to contested real estate at 221 Main Street, Springvale, Maine[1] to an irrevocable trust by quitclaim deed, to be managed by both parties' attorneys, Joseph Lenkowski for

---

[1] The street address of the property has since been changed to 432 Main Street, Springvale, Maine.

Plaintiff, and Lawrence Zuckerman for the Defendants. The attorneys also notified the York County Probate Court in September 2002, and the Cumberland County Superior Court in October 2002, that they had reached an agreement and both suits against the Plaintiff[2] were dismissed with prejudice.

The final documents creating the trust, memorializing the settlement, and deeding the property to the trust, were completed on September 11, 2003. The parties' attorneys, the Plaintiff, and two of the four Noel children, Rene Jr., and Paul, signed the settlement and trust documents. Spaces provided on both documents for Michael and Laurie's signatures were left blank.

On October 19, 2003, Laurie, who lived out of state, authorized her brother Rene, Jr. to act on her behalf in the matter of the settlement and trust under a limited durable power of attorney that expired under its own terms on October 31, 2003. However, Rene, Jr. did not sign the settlement and trust documents on Laurie's behalf until June 1, 2004. Laurie conveyed the same limited power of attorney to Rene, Jr. a second time on June 10, 2004. Michael authorized Rene, Jr. to exercise a limited power of attorney on his behalf in the settlement and trust on May 31, 2004, and Rene, Jr. signed the settlement and trust documents on Michael's behalf on June 8, 2004. During the almost nine months it took to assemble the remaining signatures, the settlement and trust documents, the trust deed, and the property were not held in escrow.

By April 2004, Plaintiff had remarried and was seeking information from attorney and trustee Lenkowski about the conditions of the trust. When Plaintiff learned that two of the Defendants' signatures were missing from the settlement and trust documents, she began making arrangements to sell the property at 221 Main

---

[2] *In re: Estate of Rene D. Noel, Sr., Rene D. Noël, Jr. v. Denise E. Noel, Personal Representative*, York County Probate Court, Docket No. 1997-0942(2);
*Rene D. Noel, Jr., et al, v. Denise E. Noel*, Cumberland County Superior Court, Docket No. RE-01-113.

Street. Plaintiff instructed a new attorney to notify the Defendants she was revoking the settlement agreement and trust because the documents had not been signed in a timely manner. Plaintiff's notice of revocation was conveyed to Defendants' attorney by fax on June 10, 2004. Shortly thereafter, Plaintiff moved out of 221 Main Street, leaving it vacant. Although the property was listed for sale, Plaintiff removed it from the market in July 2004, at the recommendation of her new attorney.

On July 12, 2004, Plaintiff filed suit, seeking a declaratory judgment finding that the settlement, trust, and quitclaim deed were void because documents had not been signed within a reasonable time, and that Plaintiff's offer to settle had been properly revoked. The Defendants counterclaimed, alleging Plaintiff breached the terms of valid settlement and trust agreements (Count I) and committed waste at 221 Maine Street, damaging their pecuniary and property interests (Count II). On November 19, 2004, Plaintiff filed a Motion for Summary Judgment pursuant to Maine Rule 56. On December 20, 2004, Defendants filed a Motion for Partial Summary Judgment on the issue of the settlement's validity and on their breach of contract counterclaim. Defendants also filed a Motion to Dismiss after the parties failed to complete Alternative Dispute Resolution within the time periods stipulated in Maine Rule 16B(a).

## I. Motions for Summary Judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law." *Anchorage Realty Trust v. Donovan*, 2004 ME 137, ¶ 11, __A.2d __(citation omitted). The court will accept as true "the uncontroverted facts properly appearing in the record." *Id.*

3

Plaintiff argues that she was permitted to revoke the settlement and trust agreements because some of the Defendants had not accepted the agreement within a time that was reasonable as a matter of law. Plaintiff maintains that the settlement and trust agreements were merely offers by the Plaintiff, inviting acceptance by the Defendants, and that the final written agreements had to be validly signed by all four Defendants to be binding. Plaintiff further argues that it was unreasonable for the September 11, 2003 agreement to be signed on behalf of Michael on June 8, 2004, and not to be signed on behalf of Laurie under a valid power of attorney.

Defendants argue the September 11, 2003, settlement and trust agreements are valid as a matter of law. Defendant argues all parties on both sides of this dispute were bound by the terms of the settlement and trust agreements on September 11, 2003 when the documents were signed by Plaintiff, the party to be charged, and when the Plaintiff delivered the deed to the trust. Defendants argue Rene, Jr. and Paul were authorized, expressly and impliedly, to represent the interests of Michael and Laurie at the signing. Because the agreement is valid and binding, Defendants argue, Plaintiff has breached that agreement by attempting to sell the property.

**Discussion**

Compromise settlements of will contests are "looked on with favor by the courts as tending to reduce litigation and as contributing to harmonious family relations." *Validity and Enforceability of Agreement to Drop or Compromise Will Contest or Withdraw Objections to Probate*, 42 A.L.R.2d 1319 (1999). Such settlements "are generally regarded as valid and enforceable, provided they possess the ordinary essentials of contracts generally." *Id.* In *Benner v. Lunt*, the Law Court concurred, stating that an agreement to abandon a will contest is "favored in equity, and where a contract arising in compromise of a claim has been entered into but not fully executed, where negotiations

4

are between adults, and all is fair, open and above board, its provisions may be enforced . . . ." 126 Me. 167, 170, 136 A. 814 (Me. 1927).

Under the "ordinary essentials of contracts," [i]f a written draft of an agreement is prepared, submitted to both parties, and each of them expresses unconditional assent thereto, there is a written contract." 1 Corbin on Contracts § 2.10 (rev. ed. 1993). Under common law, "there need be no signatures unless the parties have made them necessary at the time they express their assent or as a condition modifying that assent. *Id.* (citing, e.g., *Chudnow Constr. Corp. v. Commercial Discount Corp.*, 180 N.W.2d 697 (Wis. 1970); *Woodbury v. United States,* 192 F.Supp. 924 (D.C. Or. 1961) *aff'd* 314 F.2d 291 (9th Cir. 1963)(finding contractual liability under a written contract may be assumed without signing it)). Thus, "an unsigned agreement, all the terms of which are embodied in writing, unconditionally assented to by both parties, is a written contract." *Id.*

The Law Court has held that a "contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liability of each party." *Sullivan v. Porter,* 2004 ME 134, ¶ 13, 861 A.2d 625, 631. Thus, the Law Court found a contract existed when an oral agreement was assented to by both sides and "embodied the essential material terms ... including the identification of the property, the parties to the sale, the purchase price, the amount of the down payment and the type of financing. *Id.* [3]

---

[3] Signatures are often required for an agreement to satisfy the Statute of Frauds. Under Maine's Statute of Frauds, any contract "for the sale of lands, tenements or hereditaments, or of any interest in or concerning them" must be "in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized." 33 M.R.S.A. § 51(2004). The "party to be charged therewith" refers to the party to be charged in a legal proceeding to enforce the contract. RESTATEMENT (SECOND) OF CONTRACTS § 135, cmt. a (1981). *See also, Rulon-Miller v. Carhart,* 544 A.2d 340, 342 (Me. 1988)(finding defendant trustee's signature alone, as party to be charged, sufficient to satisfy Statute). Here, Plaintiff, as

5

The Law Court has also expressly adopted from Restatement (Second) of Agency the rule concerning ratification of a contract by a person whose signature is expected, but missing. *QAD Investigators, Inc. v. Kelly,* 2001 ME 116, ¶ 22, 776 A.2d 1244, 1250. In *QAD,* one party's signature line on an instrument was left blank, but the other line was signed by a partner. Under the Restatement, the contract is considered ratified by the non-signatory by affirmance when he did not object and elected to treat the contract as binding. *Id.* The Law Court stated, "an affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." *Id.* (citing Restatement (Second) of Agency §§ 82, 94)[4](finding even if a signer's execution of a contract was not authorized on behalf of the nonsignatory, the nonsignatory's behavior following the execution ratified the signer's authority to bind him.) *Id.* ¶ 23.

Here, there is no dispute that the parties negotiated an agreement to create a trust in the property at 221 Main Street, to distribute Mr. Noel Sr.'s tools to his children, and to settle two suits pending against the Plaintiff in September 2002. (Defendants Exhibit C) It is also undisputed that the terms of the 2002 agreement were sufficiently definite to allow the parties to inform the Probate and Superior Courts that a global settlement had been reached, with all Defendants as parties. It is undisputed that attorneys for all parties collaborated on the final written instruments executed September 11, 2003, expressly naming all four Defendants and the Plaintiff as parties to

---

counterclaim defendant charged with breach of contract, is the party to charged. Plaintiff's signature on the trust and settlement documents is undisputed and satisfies the requirements of the Statute of Frauds. A signature is also required to create a trust in land. Maine statutes provides:

> There can be no trust concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing signed by the party *or his attorney.*

33 M.R.S.A. § 851 (2004)(emphasis added). Here, the trust document was signed by attorneys for both sides.

4 "Ratification of an unauthorized signature [by person who didn't properly sign] may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature." *QAD Investigators, Inc. v. Kelly,* 2001 ME 116, ¶ 21, 776 A.2d 1244, 1250 (quoting *Perkins v. Philbrook,* 443 A.2d 73, 75 (Me. 1982).

6

the agreement, and naming all four Defendants and Plaintiff as Grantors in the trust. The uncontested record also shows both sides upon signing carried out a further provision of the agreement by distributing Mr. Noel, Sr.'s tools to Defendants. Finally, the undisputed record shows that both Michael and Laurie gave their unconditional assent to the terms of the settlement and trust when they created in Rene, Jr. the limited power of attorney to ratify the agreement and trust on their behalf. That their actual signatures were not affixed properly, or were added later, does not controvert the fact that the undisputed record shows both Michael and Laurie assented to the agreement without reservation, in Laurie's case, on October 2003, and again in June 2004, and in Michael's case on May 31, 2004. Furthermore, although Laurie's signature was affixed after Rene, Jr.'s limited power of attorney expired, the record provides undisputed evidence that she ratified the defective signature by affirmance, authorizing a second power of attorney and assenting at all times to the terms of the agreement. Thus by June 8, 2004, all Defendants and Plaintiff were parties to a binding written agreement as a matter of law.

The remaining question, then, is whether Michael and Laurie's unconditional assent was given within a reasonable period of time. The Law Court has held that, in agreeing to be bound by a contract, "when no time is specified, a reasonable time is implied." *Fortin v. Wilensky*, 142 Me. 372, 378, 53 A.2d 266, 268 (1947). *See, e.g., Estate of Champlin*, 684 A.2d 798, 801 (Me. 1996)(finding it unreasonable that a bequest was not accepted 40 years after it was made); *Drew v. Wakefield*, 54 Me. 291, 293-95 (1865) (gift first accepted 11 years after its making is not reasonable); *Burnham v. Holmes*, 137 Me. 183, 16 A.2d 476 (1940)(attempted acceptance of a roadway after 38 years of an offer is not within "reasonable time"). "It is firmly settled in this State that what constitutes a

7

reasonable time, on undisputed facts, ... is a question of law." *Franklin Paint Co. v. Flaherty*, 139 Me. 330, 331, 29 A.2d 651, 652 (1943).

Here, the undisputed record shows that the parties negotiated a fairly complicated agreement to share interest in the property at 221 Main Street and other property five years after Mr. Noel, Sr.'s death. The parties then took an additional year to craft all the terms of their agreement into a final written form. Meanwhile, the Defendants completely performed their obligation to Plaintiff to drop the will contest and dismiss their suits against her. It is also undisputed that the two Defendants not present at the September 11, 2003 signing either resided or sometimes worked out of state. Furthermore, nothing in the record suggests that the parties were operating under the narrow time constraints that sometimes attend commercial transactions, that "time was of the essence," or that Plaintiff was prejudiced in any way by the time needed to gather signatures. *See, e.g., Fortin*, 142 Me. at 378-79, 53 A.2d at 296.

There is therefore no issue of material fact concerning whether documents six years in the making, may not reasonably take nine months to be signed by all Defendants, especially where all parties assented unconditionally to their terms, and where substantial performance by both sides, including dismissal of suits against the Plaintiff to her benefit, was well under way.

Because the time needed to gather signatures on the settlement and trust agreements was reasonable as a matter of law, Plaintiff could not properly revoke those agreements, and Plaintiff's Motion for Summary Judgment must be denied. Because Plaintiff did not validly revoke the settlement and trust agreements, and because those agreements have the unconditional assent of all participants, those agreements are valid and binding as a matter of law, and Defendants' Motion for Summary Judgment on their validity will be granted.

8

## B. Did Plaintiff Breach the Contract as a Matter of Law?

Defendants argue there is no disputed issue of fact material to whether Plaintiff breached a valid agreement when she attempted to sell the property at 221 Main Street in June 2004, without complying with the express terms of the trust governing such sales. Plaintiff argues she had properly revoked the settlement agreement and trust, and so was not in breach.

Under the terms of the parties' 221 Main Street Springvale Irrevocable Trust, Plaintiff had, at any time, "the right to direct the Trustees to sell the Trust Property."**(Section 6).** Alternatively, if Plaintiff abandoned the property, "that Property shall be sold ... by and through the Trustees." In either case, the proceeds were to be divided among the Plaintiff and four Defendants according to the terms of the trust. The Trust agreement also states that the Trustees alone have the power "to enter into any and all agreements and execute and (sic) all documents necessary to effect the sale of the Trust property in the event a sale of the Trust property is required." **(Section 10).**

Here, the uncontested facts show Plaintiff met with attorney and trustee Lenkowski some time in April or May to discuss selling the property. It is not disputed that Plaintiff listed the 221 Main Street property for sale on May 19, 2004. On June 19, 2004, Plaintiff initialed her own name on a Seller's Property Disclosure Form, and also initialed for "Noel-Rene Sr. Heirs." On June 22, 2004, Plaintiff entered a Purchase and Sale agreement for the trust property and notified the four Defendants of her intent to sell on June 23, 2004. On July 9, 2004, one day after filing her complaint, Plaintiff withdrew the property from the market at the advice of her new attorney.

The parties dispute when Plaintiff first discussed selling the property with her former attorney and Trustee, Mr. Lenkowski, and whether he advised her she could

proceed with the listing the property for sale. There is a genuine issue of fact concerning the extent and substance of Trustee Lenkowski's communication with the Plaintiff concerning the sale of the property. However, under the express terms of Section 6 of the trust, Plaintiff is not precluded from initiating the sale of the property, and Plaintiff undertook several of the preliminary steps leading up to a sale, but did not sell the property in fact. There is a genuine issue of material fact concerning to what extent Plaintiff acted under the consent of Trustee Lenkowski and within the terms of the Trust in initiating the sale, precluding summary judgment on Count I of Defendants' counterclaim.

The entries will be as follows:

The Court Denies Plaintiff's Motion for Summary Judgment on its Declaratory Judgment Claim and Grants Defendants' Motion for Partial Summary Judgment, finding the Settlement Agreement and Trust are valid and enforceable.

The Court Denies Defendants' Motion for Partial Summary Judgment on its counterclaim (Count I) for Breach of Contract.

The Court Denies Defendants' Motion to Dismiss pursuant to Maine Rule 16B of Civil Procedure and orders the parties to engage in alternative dispute resolution pursuant to Rule 16B(l) on remaining issues.

Dated:      March 25 2005

G. Arthur Brennan
Justice, Superior Court

Patrick S. Bedard, Esq. - PL
Lawrence Zuckerman, Esq. - DEFS

10