UNITED STATES COURT OF APPEALS
for the Fifth Circuit

_____

No. 00-50588
_____


JEFF KAPCHE,

                                        Plaintiff-Appellant,

VERSUS

CITY OF SAN ANTONIO,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

August 30, 2002

Before EMILIO M. GARZA and PARKER, Circuit Judges and HINOJOSA[*],
District Judge.

        Per Curiam:

        In the second appeal of this case, Plaintiff-Appellant Jeff

Kapche (Kapche) asks that we review the order of the United

States District Court for the Western District of Texas granting,

for a second time, summary judgment for Defendant City of San

Antonio (City), again dismissing Kapche's claims.  For the

reasons that follow, we vacate the judgment of the district court

and remand for further proceedings consistent with this opinion.

_____

        [*] District Judge of the Southern District of Texas, sitting
by designation.

I. Background

As the Court noted in the prior decision, *Kapche v. City of San Antonio*, 176 F.3d 840 (5th Cir. 1999) (*Kapche I*), Kapche has insulin-treated diabetes mellitus (ITDM).[1]  In 1994, he applied for a law enforcement officer position with the San Antonio Police Department (SAPD).  Although Kapche passed both a written test and a background check, the SAPD informed Kapche that he was disqualified because of his ITDM.  Kapche filed suit in part under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213,(ADA).  The district court granted summary judgment for the City and dismissed the action finding that, as a matter of law, Kapche was not qualified to be a police officer with the SAPD. *Kapche* at 842.  Kapche appealed.

In *Kapche I*, the only issue in dispute was whether, with or without accommodation, Kapche was qualified to perform the "essential functions" of an SAPD police officer under the ADA. *Id.* at 843.  After determining that driving was an essential function of the SAPD job for which he applied, we turned to the question of whether Kapche was qualified to perform the task of driving.  As we noted in *Kapche I*, the City could require that Kapche not pose a "direct threat" to others in the workplace. *Id. citing* 42 U.S.C. 12113(b).  Kapche was a direct threat if he

---

[1] *Kapche I* offers a more complete recitation of the facts.

2

posed a "significant risk to the health and safety of others that [could not] be eliminated by reasonable accommodation."[2] Ordinarily, whether a person poses a direct threat is determined through an *individualized assessment* of the person's "present ability to safely perform the essential functions of the job."[3]

## II. Analysis

In *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386 (1994), and *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995) *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1263 (1996), we diverged somewhat in relationship to ITDM from this individualized assessment requirement. It was this divergence upon which the district court initially relied in granting summary judgment.

Addressing a class action claim under the Rehabilitation Act, 29 U.S.C. §§ 701-796, the *Chandler* case held that "as a matter of law, a driver with insulin dependent diabetes... presents a genuine substantial risk that he could injure himself or others." 2 F.3d at 1395. In *Daugherty*, we applied this holding to a claim under the ADA. 56 F.3d at 698. With *Chandler* and *Daugherty*, this Circuit appeared to abrogate the need to

---

[2] 42 U.S.C. § 12111(3)

[3] 29 C.F.R. § 1630.2(r)

conduct an individual assessment, at least in the case of persons with ITDM applying for positions in which driving was an essential function.

In *Kapche I*, 176 F.3d at 845, we acknowledged that the *Chandler* decision itself tempered its holding with the following:

> We nonetheless share the hope of the court in *Davis* [*v. Meese*] that medical science will soon progress to the point that "*exclusions on a case by case basis will be the only permissible procedure*; or, hopefully, methods of control may become so exact that insulin-dependent diabetics will present no risk of ever having a severe hypoglycemic episode." 692 F.Supp.[505, 520 (E.D.Pa.1988), aff'd, 865 F.2d 592 (3d Cir.1989)].

*Chandler*, 2 F.3d at 1395, n.52. (emphasis added). Given the reliance of the *Chandler* and *Daugherty* decisions upon the capabilities of medical science available and the federal highway safety regulations in force at the point in time at which those decisions were rendered, as had been contemplated by *Chandler* we examined in *Kapche I* the continuing viability of this apparent exception. *Kapche,* at 846-47.

We found that there was "a genuine dispute of material fact regarding the safety risk posed by insulin-dependent drivers with diabetes mellitus." *Id*. In vacating the judgment and remanding the case, we stated:

> Consequently, we conclude, the time has come for a reevaluation of the facts that supported our prior *per se* holdings in *Chandler* and *Daugherty*. To this end, we vacate the district court's grant of summary judgment in favor of the City and remand for a determination whether today there exists new or improved technology--not available at the time

4

these cases were decided--that could now permit insulin-dependent diabetic drivers in general, and Kapche in particular, to operate a vehicle safely.

Based on our *de novo* review of the summary judgment evidence, we conclude that the City's physicians did not conduct an individualized assessment of Kapche's present ability to perform safely the essential functions of a police officer. Therefore, if the district court finds a sufficient factual basis for overcoming the *per se* rule of *Chandler/Daugherty*, that court should open discovery (or conduct a full blown merits trial) for a determination of Kapche's qualification to perform all of the essential functions of the job.

Also based on our *de novo* review, we conclude that Kapche has failed to raise a genuine issue of material fact whether the City violated its reasonable accommodation obligation under the ADA. Thus, if the district court should find a sufficient factual basis for concluding that, without accommodation, insulin-dependent diabetic drivers continue to pose a direct threat as a matter of law, the court should reinstate summary judgment in favor of the City.

*Id*.

Upon remand, Kapche and the City filed cross motions for summary judgment addressing the matters raised in *Kapche I*. Kapche argued that "blanket exclusions" are no longer viable, and an individual assessment was required. The City contended *Chandler* and *Daugherty* should continue to control; even under a partial or full retreat from *Chandler* and *Daugherty*, candidates with ITDM would not be qualified without accommodation; and even if the *per se* rule should no longer apply, *Chandler* was controlling at the time Kapche applied, rendering him unqualified.

In the Order addressing the parties' motions and the mandate of *Kapche I*, the district court again granted judgment for the

5

City and denied Kapche's motions for summary judgment. The district court declined to examine the continuing viability of a *per se* rule as applied to persons with ITDM or to Kapche in particular. Instead, the district court held that, at the time Kapche applied for a position with the SAPD, the *per se* rule from *Chandler* and *Daugherty* was controlling Fifth Circuit law. Therefore, the district court concluded, the City was justified in rejecting Kapche's application. Any consideration of whether such a rule continued to be viable, the district court maintained, would be merely advisory in nature. The district court again dismissed the action without addressing the merits of whether Kapche was qualified to perform the essential functions of an SAPD police officer. Again, Kapche appeals.

We initially note here that a district court on remand is not free to disregard the "explicit directives" of the appellate court. *U.S. v. Becerra*, 155 F.3d 740, 752-53 (5th Cir. 1998).

> Because this case reaches us on appeal for the second time, we must consider the implications of our prior opinion in *Leal* and the well-settled "law of the case" doctrine. "Under the 'law of the case' doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Illinois Cent. Gulf R.R. v. International Paper Co.*, 889 F.2d 536, 539 (5th Cir.1989)... The law of the case doctrine, however, is not inviolate. We have explained that "a prior decision of this court will be followed without re-examination ... unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *North Mississippi Communications, Inc. v. Jones*, 951 F.2d

6

652, 656 (5th Cir.1992); *see also City Pub. Serv. Bd. v. General Elec. Co.*, 935 F.2d 78, 82 (5th Cir.1991); *Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir.1989); *Daly v. Sprague*, 742 F.2d 896, 901 (5th Cir.1984).

> A corollary of the law of case doctrine, known as the mandate rule, provides that a lower court on remand must "implement both the letter and the spirit of the [appellate court's] mandate," and may not disregard the "explicit directives" of that court. *See Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir.1992). "The mandate rule simply embodies the proposition that 'a district court is not free to deviate from the appellate court's mandate.'" *Barber v. International Bhd. of Boilermakers*, 841 F.2d 1067, 1070 (11th Cir.1988) (quoting *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 n. 2 (11th Cir.1984)); *see also Harris v. Sentry Title Co.*, 806 F.2d 1278, 1279 (5th Cir.1987) ("It cannot be disputed that 'when the further proceedings [in the trial court] are specified in the mandate [of the Court of Appeals], the district court is limited to holding such as are directed.'")(alterations in original)(quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.404(10), at 172 (1984)); *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir.1986) (holding that "a mandate controls on all matters within its scope").

*Id.*

Although the district court failed to explicitly identify upon which grounds it decided to neglect the mandate of *Kapche I*, it appears the only applicable reason is that the district court believed we were clearly erroneous in our instruction to the district court. The district court found that there was no controlling law contrary to *Chandler* and *Daugherty*, that the district court was not free to overrule *Chandler* and *Daugherty*, and that Kapche was not qualified when he applied in 1994. While the district court identified that *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), bore

7

some relevance, it failed to accord *Sutton* any degree of authority over the present action.[4]  We must address whether the district court was correct to ignore our earlier mandate and whether summary judgment was properly granted for the City.

As we noted above, *Chandler* and *Daugherty* presented an exception.  It is significant to note here that neither *Chandler* nor *Daugherty* ever explicitly mention the term individual assessment, despite its use in the regulations and in case law surrounding the Rehabilitation Act and the ADA.  More recent decisions of the United States Supreme Court now render the *per se* rule of *Chandler* and *Daugherty* inapplicable to the present case.  Four such intervening cases speak to an individual assessment requirement.

The *Sutton* case guides us here with its acknowledgment that individualized inquiries are mandated by the ADA. 527 U.S. at 482-84.  *Sutton* addressed whether a person need be judged in light of any corrective or mitigating measures to determine whether the person has a disability under the ADA. *Id*.  In *Sutton*, the petitioners, suffering from severe myopia but

_____

[4] *Sutton* did provide the City with a new grounds for summary judgment.  Kapche contends the City had conceded that Kapche's ITDM constituted a disability under the ADA. Following *Sutton*, however, the City retreated from this position and moved for judgment on the grounds that Kapche did not have a disability. The district court granted Kapche's request to add an allegation that the City "regarded" Kapche as having a disability.  The court found that fact issues precluded judgment on that aspect.

8

corrected with lenses, sought employment as commercial airline

pilots.  The Supreme Court held in part that the petitioners

failed to allege a disability under the ADA. *Id.* at 475-89.

While *Sutton* did not address the exact question here, it did

provide:

> We conclude that respondent is correct that the approach adopted by the agency guidelines--that persons are to be evaluated in their hypothetical uncorrected state--is an impermissible interpretation of the ADA. Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act....
>
> * * *
>
> The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). Thus, *whether a person has a disability under the ADA is an individualized inquiry*. See *Bragdon v. Abbott*, 524 U.S. 624, 641-642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to consider whether HIV infection is a *per se* disability under the ADA); 29 CFR pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").
>
> The agency guidelines' directive that persons be judged in their uncorrected or unmitigated state runs directly counter to the *individualized inquiry mandated by the ADA*. The agency approach would often require courts and employers to speculate about a person's condition and would, in many cases, force them to make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition. For instance, under this view, courts would almost certainly find all diabetics to be disabled, because if they failed to monitor their blood sugar levels and administer insulin, they would almost certainly be substantially limited in one or more major life activities.

9

> A diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes. *Thus, the guidelines approach would create a system in which persons often must be treated as members of a group of people with similar impairments, rather than as individuals. This is contrary to both the letter and the spirit of the ADA.*

*Id*. at 482-84 (emphasis added).

In *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), a case the district court did not mention, the Supreme Court again addressed what constitutes a disability under the ADA. In *Albertson's,* the respondent was a former commercial driver who lost his job due to his vision. The respondent claimed his monocular vision was a disability under the ADA. In declining to make any disability finding as to monocularity as a matter of law, *Albertson's* offered the following relevant language:

> Finally, and perhaps most significantly, *the Court of Appeals did not pay much heed to the statutory obligation to determine the existence of disabilities on a case-by-case basis. The Act expresses that mandate clearly by defining "disability" "with respect to an individual," 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on "such individual," § 12102(2)(A). See Sutton*, 527 U.S., at 483, 119 S.Ct. 2139; cf. 29 CFR pt. 1630, App. § 1630.2(j) (1998) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"); *ibid*. ("The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis").

*Id.* at 565-66 (emphasis added).

10

The *Albertson's* case further acknowledges, as we did in *Kapche I*, the Equal Employment Opportunity Commission's (EEOC) position that an individualized assessment is required under the "direct threat" inquiry:

> [The "direct threat"] criterion ordinarily requires "an individualized assessment of the individual's present ability to safely perform the essential functions of the job," 29 CFR § 1630.2(r) (1998), "based on medical or other objective evidence," *Bragdon*, 524 U.S., at 649, 118 S.Ct. 2196 (citing *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)); *see* 29 CFR § 1630.2(r) (1998) (assessment of direct threat "shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence").

*Id*. at 569.

In *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001), the Supreme Court addressed, in part, another section of the ADA, the requirement that a public accommodation be reasonably modified for disabled individuals.

> To comply with this command, *an individualized inquiry must be made* to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration.

*Id*. at 688 (emphasis added).

Finally of note, the Supreme Court more recently addressed whether the diagnosis alone of carpal tunnel syndrome could establish a disability under the ADA in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Court again provided:

11

*An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person.*... Given... large potential differences in the severity and duration of the effects of carpal tunnel syndrome, an individual's carpal tunnel syndrome diagnosis, on its own, does not indicate whether the individual has a disability within the meaning of the ADA.

*Id*. 122 S.Ct. at 692.(emphasis added; citations omitted).

These intervening Supreme Court cases consistently point to an individualized assessment mandated by the ADA under various sections of the Act.  We further note that we are unaware of any decision from our sister Circuits abrogating the requirement of an individualized assessment in favor of a *per se* exclusion under the ADA.

While a court is to apply the law in effect at the time it renders its decision*, see Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), intervening Supreme Court decisions apply to cases on appeal. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) citing *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).  We find that, upon the prior remand of this action, the district court erred in failing to apply *Sutton*, presently reinforced by *Albertson's, Martin,* and *Toyota.*

In *Kapche I*, we determined that the City had not conducted an individualized assessment of Kapche's ability to perform the

12

essential functions of an officer with the SAPD.  We note that

one aspect of relief sought by Kapche was reinstatement as a

candidate.  While the district court maintained that since Kapche

applied in 1994, a time in which *Chandler* and *Daugherty*

controlled, the matter would be moot, we hold that the

alternative relief sought by Kapche of reinstatement as a

candidate renders the City's failure to assess Kapche's abilities

on an individual basis as stating a claim of a present and

continuing violation of the ADA.[5]

We note here that the district court misinterpreted *Kapche*

*I*.  The mandate did not require the district court to overturn

Fifth Circuit law.  The district court was merely instructed to

address whether, under the facts presented by the parties herein,

the temporally limited holdings of *Chandler* and *Daugherty* could

continue to apply to Kapche.  Such an interpretation conveys the

letter and the spirit of the mandate in a manner the district

court should have adopted.  The parties presented evidence in

conjunction with renewed motions for summary judgment consistent

with the mandate of *Kapche I*.

We briefly note that Kapche presented evidence of such

medical advancements as portable glucose monitors, routine

---

[5] This holding does not prevent the district court from making the determination upon remand that since *Chandler* controlled at the time of Kapche's application in 1994, he may not be entitled to backpay and compensatory damages.

13

hemoglobin testing, improved insulin delivery systems, and improved insulin to the district court.  Kapche further argued that his own condition now warranted a finding he is able to safely perform the essential function of an SAPD police officer. Kapche also pointed to changes in various federal employment "protocols," which now require persons with diabetes be considered on a case by case basis.  The City fails to refute these contentions in any meaningful manner.  Neither party, however, addresses the means in which this Court, without findings from the district court, considers said evidence and makes a finding as to whether the *per se* rule of *Chandler* and *Daugherty* continues to be viable without reference to the intervening Supreme Court cases.

As we have previously instructed the district court on this matter, the appropriate action at this point would appear to involve the issuance of a writ of mandamus, compelling the district court to comply with our prior mandate.  *See, e.g. In re Chambers Development Co., Inc.*, 148 F.3d 214 (3rd Cir. 1998). However, no petition for such a writ of mandamus was presented to this Court on this matter.  As the issue has been resolved by intervening Supreme Court case law, the prior mandate need not be further addressed.


III. Conclusion


14

For the reasons stated above, we hold that an individualized assessment of Kapche's present ability to safely perform the essential functions of an SAPD police officer is required. We again VACATE the district court's grant of the City's motions for summary judgment and the denial of Kapche's motions for summary judgment. In accordance with the mandate of *Kapche I*, we REMAND the action for the district court to determine whether, under an individualized assessment, Kapche could perform the essential functions of an SAPD police officer. The district court may make any other determinations or conduct any proceedings consistent with the rulings herein.[6]

---

[6] Although Kapche asks that we consider and grant judgment upon his claims that he is able to perform the essential functions of an SAPD police officer and that the City regarded Kapche as disabled, we believe the district court is the appropriate forum to first consider the merits of these claims.