# United States Court of Appeals
## For the First Circuit

No. 17-1906

APB REALTY, INC.,

Plaintiff, Appellant,

v.

GEORGIA-PACIFIC LLC,

Defendant, Appellee,

LIQUIDITY SERVICES, INC.; BEASLEY FOREST PRODUCTS, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Howard B. D'Amico and Howard B. D'Amico, P.C. on brief for appellant.
Nicholas D. Stellakis, Timothy J. Fazio, Shauna R. Twohig, and Manion Gaynor & Manning LLP on brief for appellee.

May 7, 2018

**KAYATTA**, **Circuit Judge**. After a proposed deal concerning the purchase of eighty-eight rail freight cars arguably came to naught, APB Realty, Inc. sued Georgia-Pacific LLC for breach of contract. Georgia-Pacific successfully moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and APB promptly appealed. Because we find that APB's complaint adequately pleads a claim for breach of contract by Georgia-Pacific, we vacate the judgment and remand for further proceedings.

## I.

In reviewing a dismissal for failure to state a claim, we draw the facts from the complaint, and we consider as well any writings that are "fairly incorporated" in the complaint. Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018) (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).

The facts alleged by APB read like a tricky example from a first-year course in contracts. In April 2015, Georgia-Pacific let APB know that Georgia-Pacific had eighty-eight rail cars to sell "where is, as is." APB was interested, and extended an offer to Georgia-Pacific's broker as follows:

> Total for all 88 x Log Stake Railcars
> $1,636,000 (Including 16% Buyer's Premium).

APB spoke further with Georgia-Pacific's broker, apparently to obtain schematics on the cars. On July 23, Georgia-Pacific's broker sent another email, stating as follows:

> Per our discussion yesterday, here are the schematics for the cars, that include the manufacturer information.
> Our team has presented your offer to [Georgia-Pacific] for final approval, and should have an answer by close of business tomorrow.
> I'll let you know when the approval comes, and please don't hesitate to call if you should have any additional questions.
> One of [our] team members along with [Georgia-Pacific] will coordinate transfers of all of the cars upon completion of the sale.

The next day, Georgia-Pacific's broker emailed APB once more, as follows:

> Here are the two options that [Georgia-Pacific] has brought back for us to close the deal on.
> Option 1, basically states that for $61K, you buy insurance that will replace as many Southern Wheels as needed to eliminate that problem. [Georgia-Pacific] will manage and take care of that issue. So after any real costs, you are paying a small percentage as insurance against the number being larger than 51 wheel sets.
> Option 2 is the deal with you taking responsibility for any Southern Wheels.
> Let me know which deal is best for you, and I'll get this closed out as early as possible next week.

The email then proceeded to summarize the options thusly:

> Option 1 . . . As is, where is. Georgia-Pacific assumes responsibility for the replacement of all southern wheels if found.
> Customer retains responsibility for

> transportation to final destination. Proposed Offer: $1,697,000. . . .
> Option 2: . . . As is where is. Customer assumes responsibility for the replacement of all southern wheels if found. Customer retains responsibility for transportation to final destination. Proposed Offer: 1,636,000.

Oddly, the complaint does not tell us what "Southern Wheels" are. But the parties' communications as alleged do make clear that Georgia-Pacific regarded them as being a problem with some of the cars that would take on the order of $61,000 ($1,697,000 minus $1,636,000) to eliminate.

Three days later, APB responded that it was "leaning towards option 1, should know this afternoon," and confirmed with Georgia-Pacific's broker one detail that apparently arose in conversation (45 cars would "come with the free move"). Before APB confirmed its selection, however, Georgia-Pacific's broker emailed once again, this time with the news that Georgia-Pacific "accepted an offer to sell all 88 railcars, which was substantially higher than yours. This offer has been processed, and we expect to close on it shortly. If this high offer does not close we will come back to you and see if you have a further offer for these cars." Adding insult to injury, APB shortly thereafter learned that the interloping purchaser was the same company with which APB, a broker, had been negotiating to resell the cars. In short, the seller and the ultimate buyer cut out APB, the middle person.

Irked by the course of events, APB sued all involved in Massachusetts state court, alleging that each had breached contractual promises to APB. Defendants removed the matter to the District of Massachusetts and moved to dismiss. All defendants other than Georgia-Pacific were dismissed from the case on the unopposed recommendation of a magistrate judge. APB appeals only from the subsequent decision of the district court dismissing the complaint against Georgia-Pacific under Federal Rule of Civil Procedure 12(b)(6) for failure to allege facts plausibly establishing the formation of a binding contract. APB Realty, Inc. v. Georgia-Pacific LLC, 272 F. Supp. 3d 277, 280 (D. Mass. 2017). This appeal followed.

## II.

We note at the outset that neither party argued to the district court or to this court on appeal that Massachusetts' version of the Uniform Commercial Code, rather than Massachusetts' common law of contracts, should apply to this dispute. Nor does either party suggest that Massachusetts law on the formation of commercial contracts differs in any material manner from the law of contracts as set forth in the American Law Institute's Restatement (Second) of Contracts. To the contrary, both parties cite cases decided under Massachusetts law that rely on the Restatement. See, e.g., McGurn v. Bell Microproducts, Inc., 284 F.3d 86, 89 (1st Cir. 2002) (citing the Restatement (Second) of

Contracts to describe Massachusetts contract law relating to offers, counteroffers, and acceptance).

The district court agreed with APB that option 2 in Georgia-Pacific's penultimate email was materially the same as APB's offer. See 272 F. Supp. 3d at 280 ("Liquidity responded on behalf [of] Georgia-Pacific, proposing two alternatives, the second of which corresponded to the offer proposed by APB.") (emphasis added). Georgia-Pacific challenges this conclusion only by arguing that when APB made its offer the condition of the cars was "unknown," while option 2 presented by Georgia-Pacific revealed that there was a problem for which APB would have to accept responsibility. But for purposes of a motion to dismiss it is certainly plausible that, either in relevant usage or in the context of the parties' dealing, an offer to buy used rail cars in unknown condition, in response to a proffer of the cars "as is," already presumed that APB would be stuck with any problem, including the Southern Wheels problem as confirmed by Georgia-Pacific in option 2. Imagine that a homeowner leaves a lawnmower on the curb, with a sign attached saying "For sale, as is, where is." If her neighbor then said "I'll give you $100 for that lawnmower," it would surely be reasonable to interpret this exchange as an offer to purchase the lawnmower "as is," despite the fact that the neighbor did not expressly include that language in her offer. In this entirely plausible view, option 2's

provision concerning responsibility for the Southern Wheels problem simply clarified rather than amended the terms of the offer being accepted. Williston describes just such a scenario: "Occasionally an offeree, out of ignorance or an abundance of caution, will insert a condition in an acceptance which merely expresses what would otherwise be implied in fact or in law from the offer. Because such a condition involves no qualification of the offeree's assent to the terms of the offer, it . . . does not preclude the formation of a contract." 2 Williston on Contracts § 6:15 (4th ed.); see also, e.g., In re Lamarre, 34 B.R. 264, 265–66 (Bankr. D. Me. 1983) (citing Williston).

Although evidently agreeing with the foregoing, the district court nevertheless found no contract had been formed because the Georgia-Pacific email that confirmed a willingness to do as APB offered also tendered an alternative option (a higher price, but no Southern Wheel risk), and APB had not yet selected either option. But the fact that Georgia-Pacific confirmed its willingness to do what APB proposed while also offering an alternative option does not mean that a contract was not formed. If A offers to buy ten widgets from B for $20, and B replies that B will be glad to sell the ten widgets for $20, or throw in an extra ten for an extra $19 (thus selling a total of twenty widgets for $39), the law would generally view B's response as an acceptance of A's offer, plus an offer of a new, alternative deal

- 7 -

that A can -- but need not -- accept.  See Williston § 6:16 ("Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made.  So long as it is clear that the offeree is positively and unequivocally accepting the offer, regardless of whether the request is granted or not, a contract is formed."); see also Targus Grp. Int'l, Inc. v. Sherman, 922 N.E.2d 841, 852 (Mass. App. Ct. 2010) ("acceptance of specific terms followed by . . . request for addition or modification does not negate agreement . . . unless the party [offering the addition or modification] demands assent to its request.") (citing the Restatement and two contract law treatises).

Moving from the hypothetical to the facts before us, one could reasonably interpret Georgia-Pacific's email as unequivocally saying, in essence:  "We accept your offer to buy the cars, as is, at your offering price.  At your election, we will also repair a Southern Wheel problem for an additional $61,000."  Under such a reading, there would be a contract pursuant to the originally offered terms and an offer to modify the contract if APB so desired and agreed.

Georgia-Pacific may well have arguments that the context surrounding the communications, evidence not yet before the court, or relevant convention and usage lead ultimately to a conclusion that no contract was formed here.  It may be, for example, that

convention within the rail industry dictates that an offer to sell "as is" does not, in fact, encompass responsibility for something like replacement of Southern Wheels.  Any such arguments, though, rely on factual determinations not properly before the court on a Rule 12(b)(6) motion to dismiss the complaint.

### III.

Because the complaint alleges facts from which we can plausibly infer the making and breaking of a contract, we <u>vacate</u> the judgment of dismissal and <u>remand</u> for further proceedings. Costs are taxed in favor of appellant APB Realty, Inc.