# United States Court of Appeals
## For the First Circuit

No. 19-1311

APB REALTY, INC.,

Plaintiff, Appellant,

v.

GEORGIA-PACIFIC LLC,

Defendant, Appellee,

LIQUIDITY SERVICES, INC.; BEASLEY FOREST PRODUCTS, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Howard B. D'Amico and Howard B. D'Amico, P.C. on brief for appellant.
Nicholas D. Stellakis, Timothy J. Fazio, Shauna R. Twohig, and Hunton Andrews Kurth LLP on brief for appellee.

January 17, 2020

**KAYATTA**, **Circuit Judge**.  Before our court for the second time, this case now illustrates one important difference between facts sufficient to make a claim plausible for pleading purposes and facts sufficient to render a judgment against the claimant clearly erroneous.  For the following reasons, we affirm as not clearly erroneous the district court's judgment entered after a bench trial finding no binding contract between the parties.

## I.

APB brought this breach-of-contract claim against Georgia-Pacific after a putative deal for the sale of rail cars fell through.  In round one of this case, we considered whether the facts alleged in APB's complaint stated a cause of action sufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See APB Realty, Inc. v. Ga.-Pac. LLC, 889 F.3d 26, 27–29 (1st Cir. 2018).  For the reader's convenience, we repeat those alleged facts more or less verbatim as follows:

\* \* \*

In April 2015, Georgia-Pacific let APB know that Georgia-Pacific had eighty-eight rail cars to sell "where is, as is."  APB was interested, and extended an offer to Georgia-Pacific's broker as follows:

> Total for all 88 x Log Stake Railcars
> $1,636,000 (Including 16% Buyer's Premium).

- 2 -

APB spoke further with Georgia-Pacific's broker, apparently to obtain schematics on the cars. On July 23, Georgia-Pacific's broker sent another email, stating as follows:

> Per our discussion yesterday, here are the schematics for the cars, that include the manufacturer information.
> Our team has presented your offer to [Georgia-Pacific] for final approval, and should have an answer by close of business tomorrow.
> I'll let you know when the approval comes, and please don't hesitate to call if you should have any additional questions.
> One of [our] team members along with [Georgia-Pacific] will coordinate transfers of all of the cars upon completion of the sale.

On July 24, Georgia-Pacific's broker emailed APB once more, as follows:

> Here are the two options that [Georgia-Pacific] has brought back for us to close the deal on.
> Option 1, basically states that for $61K, you buy insurance that will replace as many Southern Wheels as needed to eliminate that problem. [Georgia-Pacific] will manage and take care of that issue. So after any real costs, you are paying a small percentage as insurance against the number being larger than 51 wheel sets.
> Option 2 is the deal with you taking responsibility for any Southern Wheels.
> Let me know which deal is best for you, and I'll get this closed out as early as possible next week.

The email then proceeded to summarize the options thusly:

> Option 1 . . . As is, where is. Georgia-Pacific assumes responsibility for the replacement of all southern wheels if found. Customer retains responsibility for

> transportation to final destination. Proposed Offer: $1,697,000. . . .
> Option 2: . . . As is where is. Customer assumes responsibility for the replacement of all southern wheels if found. Customer retains responsibility for transportation to final destination. Proposed Offer: 1,636,000.

The complaint does not tell us what "Southern Wheels" are. But the parties' communications as alleged do make clear that Georgia-Pacific regarded them as being a problem with some of the cars that would take on the order of $61,000 ($1,697,000 minus $1,636,000) to eliminate.

Three days later, APB responded that it was "leaning towards option 1, should know this afternoon," and confirmed with Georgia-Pacific's broker one detail that apparently arose in conversation (45 cars would "come with the free move"). Before APB confirmed its selection, however, Georgia-Pacific's broker emailed once again, this time with the news that Georgia-Pacific

> accepted an offer to sell all 88 railcars, which was substantially higher than yours. This offer has been processed, and we expect to close on it shortly. If this high offer does not close we will come back to you and see if you have a further offer for these cars.

Adding insult to injury, APB shortly thereafter learned that the interloping purchaser was the same company with which APB, a broker, had been negotiating to resell the cars. In short, the seller and the ultimate buyer cut out APB, the middle person.

\* \* \*

- 4 -

In our prior decision, we held that those alleged facts allowed us to "plausibly infer the making and breaking of a contract." Id. at 30.  We therefore vacated the dismissal of the complaint and remanded so that the case might proceed beyond the pleadings.  Id.

On remand, both parties moved for summary judgment.  In so doing, neither party offered any new material evidence,[1] and both agreed to the facts as alleged.  In other words, they agreed that the alleged communications took place as stated, but neither party offered any further evidence as to how to construe those communications in light of industry convention or as a result of other transactions between the parties.  The district court proposed to convert the motions into a bench trial on the paper record, and the parties agreed.  The district court thereafter issued a decision construing Georgia-Pacific's communications as conveying an expectation that any agreement should expressly address the Southern Wheels problem, and so no contract existed

---

[1] Georgia-Pacific submitted an email from APB dated July 27, 2015 (three days after the critical July 24 email that either did or did not constitute an acceptance).  In the July 27 email, APB referred to the July 24 email as a "counter" (i.e., counteroffer), which Georgia-Pacific argued showed that APB did not consider the deal final at that time.  APB also filed an affidavit from one of its employees, Kirk Bryant, indicating his belief that the parties formed a contract by July 24 and explaining that the "counter" term did not actually indicate a contrary belief.  Because the district court as factfinder assigned no weight adverse to APB based on its July 27 email, neither do we.

- 5 -

because APB never timely conveyed its willingness to provide such an express term. See Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000) ("[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract . . . ."). The court thus entered judgment in favor of Georgia-Pacific. APB timely appealed.

## II.

Courts ordinarily treat the existence of a contract as a question of fact, see McGurn v. Bell Microprods., Inc., 284 F.3d 86, 93 (1st Cir. 2002), which we review for clear error on appeal from a bench trial, see Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018).

APB has provided no persuasive argument that the district court committed clear error. The district court found that, "as of the July 24 email proposing the[] two options, Georgia-Pacific had decided it wanted responsibility for Southern Wheels to be an express term of any agreement and that it was unwilling to rest on an 'as is' provision." "[F]or Georgia-Pacific," the court said, "APB's acknowledgement of the existence of Southern Wheels was a material term." As such, the district court found that the July 24 email did not constitute an acceptance because the parties did not reach a mutual agreement over the material terms, and so they did not form a contract.

This reading of the parties' written communications seems to us entirely reasonable. As APB claims, one could fairly read APB's first communication as offering to buy the cars "as is, where is." Georgia-Pacific's reply, though, did not say that it considered the offer acceptable. Rather, it offered two options, each of which included an express statement as to which party assumed responsibility for the Southern Wheels. Discovery might plausibly have shown that the express statement manifested merely a redundant, immaterial reiteration of "as is." On the other hand, in the absence of such evidence, one could reasonably read Georgia-Pacific's options as each requiring something APB had not yet offered: an express acknowledgment of the Southern Wheels problem and of which party would take on responsibility for this problem. In short, the record allowed a ruling in favor of either party.

APB argues that the district court failed to appreciate that our prior appellate decision "shifted the burden" to Georgia-Pacific to prove that no contract existed. In particular, APB points to our observation that "Georgia-Pacific may well have arguments that the context surrounding the communications, evidence not yet before the court, or relevant convention and usage lead ultimately to a conclusion that no contract was formed here." APB Realty, 889 F.3d at 29. Thus, APB argues in effect that the district court violated the "law of the case" doctrine by ruling in favor of Georgia-Pacific without Georgia-Pacific's having put

forward any substantial new evidence. See, e.g., United States v. Vigneau, 337 F.3d 62, 67 (1st Cir. 2003); Kapche v. City of San Antonio, 304 F.3d 493, 496 (5th Cir. 2002).

This argument ignores the fact that the procedural posture of the case has shifted. In our first decision, we reviewed a grant of a motion to dismiss for failure to state a claim. Under the standard of review we apply in assessing a challenge to such rulings, we said that we could "plausibly infer" that the parties had formed a contract. APB Realty, 889 F.3d at 30; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We similarly said that "[o]ne could reasonably interpret Georgia-Pacific's [July 24] email" as an acceptance of a contract offer. APB Realty, 889 F.3d at 29 (emphasis added). Nothing in that statement suggests that we would not also consider a contrary interpretation reasonable, even without any new evidence from Georgia-Pacific. Just because a complaint states a plausible claim for relief does not mean that the claimant has conclusively proven that claim. A well-pleaded complaint need only "raise a reasonable expectation that discovery will reveal evidence" supporting the claim. Twombly, 550 U.S. at 556; see also Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015). APB's subsequent failure to produce new evidence dashed that expectation, thereby reducing, rather than strengthening, its case.

By reading too much into our prior ruling, APB also misapprehends the manner in which the burden of proof rested once the district court tried the case to a decision. As plaintiff alleging a breach of contract, APB assumed the burden of proving a contract and a breach. See Martin v. Vector Co., 498 F.2d 16, 25 (1st Cir. 1974); see also 2 McCormick on Evidence § 337 (8th ed.) (explaining the difference between burden of pleading, burden of production, and burden of persuasion).

## III.

For the foregoing reasons, we affirm.