# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2022

Lyle W. Cayce
Clerk

No. 21-10159

Constance Westfall,

*Plaintiff—Appellant*,

*versus*

Jose Luna, Southlake Police Department Officer, In His Individual Capacity; Nathaniel Anderson, Southlake Police Department Officer, In His Individual Capacity; Venessa Trevino, Southlake Police Department Officer, In Her Individual Capacity,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:15-CV-874

Before Dennis, Southwick, and Wilson, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10159

Following a dispute between Southlake Police Department (the "Department") officers and the Westfall family at the Westfall's residence, Constance Westfall ("Westfall") filed suit in the Northern District of Texas, bringing claims against several defendants connected with the Department. The district court initially granted summary judgment in favor of all defendants on all claims and determined that Officers Trevino, Anderson, and Luna, the defendants at issue in this appeal, were entitled to qualified immunity. However, on appeal this court remanded Westfall's claims against Trevino, Anderson, and Luna back to the district court for trial, holding that there existed three genuine disputes of material fact which precluded summary judgement: (1) whether a reasonable officer could have concluded that they were performing a duty or exercising lawful authority when they entered and searched Westfall's home, (2) whether Westfall posed an immediate threat to the officers, and (3) whether Westfall actively refused to comply with the officers' instructions and efforts to restrain her. *Westfall v. Luna*, 903 F.3d 534, 542-52 (5th Cir. 2018) (*Westfall 1*). Accordingly, on remand the parties tried their case before a jury. After presentation of argument and evidence, the jury found that none of the defendants had violated the Constitution in any of the manners alleged by Westfall. Westfall filed a motion for judgment as a matter of law and a motion for new trial. The district court denied those motions, reasoning that legally sufficient evidence existed to support the jury's verdict and that Westfall failed to show that any harmful error had occurred which would entitle her to a new trial. Westfall now appeals.

No. 21-10159

## I. Background

Late one night in January of 2014, the Southlake Police Department received a call reporting a trespass. The call was from a young woman who reported that two teenage boys, one later identified as William Westfall ("William"), had entered her home without permission. The boys had been looking for a marijuana grinder. After she told them to leave, the boys left the home and walked toward the house next door (the "Westfall residence").

Shortly thereafter, Officer Trevino ("Trevino") and Officer Anderson ("Anderson") arrived and knocked on the front door of the Westfall residence. Constance Westfall opened the door and Trevino identified herself, asked for William, and disclosed the allegations the caller had made against William. Westfall responded by explaining that William was her son and that his best friend lived in the house next door. Trevino asked Westfall to go get her son. Westfall closed the door, turned around, and returned to her room. She began looking for her glasses because she is legally blind without them. The Southlake Police Department dispatcher called the Westfall residence and told William to meet the officers outside. William and another teenage boy exited the Westfall residence, with a third boy joining them soon afterwards.

Trevino and Anderson began questioning the three minor boys outside. During the questioning, Trevino allegedly smelled marijuana on William's hands and asked the boys about the presence of marijuana. At that point, Westfall exited her house. While outside, Westfall complained about her inability to see the officers without her glasses and, in response to

3

accusations that she had slammed the door in their faces, explained that she had only closed the door when the police first arrived because it was cold outside.

Following this exchange, the officers stopped addressing Westfall, despite her repeated requests that they identify themselves, and continued to question the minor boys. Eventually, the boys admitted to the officers that there was marijuana in the Westfall residence. Luna then stated that the officers could either wait for a search warrant or one of the boys could go into the Westfall residence and retrieve the marijuana. Anderson explained to Monte Westfall ("Monte"), Westfall's husband, that there was marijuana in the Westfall residence and that, with Monte's permission, the officers would go upstairs and confiscate it. Anderson suggested that one of the boys take them to the marijuana upstairs. Westfall then said, "William, go get it."

William went inside the Westfall residence. Anderson told Monte to also go inside, and Anderson followed them. As Westfall turned to follow them into her house, Luna approached her and told her, "You are not going anywhere. You slammed the door in our face." Westfall explained that she did not slam the door in his face, told Luna she was going into her house, and reached for the doorknob of the front door. Then, according to Westfall, Luna "body-slammed" her to the ground, injuring her. According to defendants, Westfall began to follow Anderson, Monte, and William into her house when Anderson stopped her and told her she had to stay outside with the other officers. Defendants claim that Westfall insisted on going inside, and Anderson replied that she was not going to "walk up on [him]" and that

No. 21-10159

he had already given her instructions to stay outside. Luna and Trevino asked Westfall to calm down and "get back over here." Westfall continued to protest,[1] then began to follow Anderson into the home, approaching him from behind "aggressively[.]" It was only then, according to defendants, that Luna "brought [Westfall] to the ground." Luna also testified that "when I spun [Westfall] around, we fell to the ground." Westfall landed on the corner of the brick porch on her right side. Luna and Trevino then held Westfall on the ground for about five minutes.

During the few minutes that Westfall was pinned, Anderson was in the Westfall residence and retrieved a metal tin containing about 2.5 grams of marijuana from inside of the house. Anderson, Monte, and William returned outside. Then, Luna and Trevino handcuffed Westfall and placed her in a police car. A Southlake police officer took Westfall to the hospital. There, hospital staff noted that Westfall had numerous abrasions and bruises, bloody urine, high blood pressure, and an increased heart rate.

Westfall was released from the hospital, taken to the Keller Police Department, and released on bail later that morning. She was charged with interference with public duties under Texas Penal Code section 38.15, though the charges were ultimately dropped. An MRI later revealed that Westfall

---

[1] The parties dispute whether Westfall said, "I don't want you people to go up there" or "I'm the one who said you people could go up there." *See Westfall*, 903 F.3d at 546.

suffered from a herniation to the L5-S1 level of her lumbar, for which Westfall has received therapy and injections.

## II. Standard of Review

We "review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (citing *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 392–93 (5th Cir. 2012)). Judgment as a matter of law is proper if "a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). The moving party can prevail only "i][f the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict[.]" *Poliner v. Texas Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 313–14 (5th Cir. 2003)). "We credit the non-moving defendant's evidence and 'disregard all evidence favorable to [the plaintiff] that the jury is not required to believe.'" *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.,* 284 F.3d 625, 631 (5th Cir. 2002)). "After a jury trial, our standard of review is 'especially deferential.'" *Id.* (quoting *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir. 2000)).

We review the denial of a motion for a new trial under an abuse of discretion standard. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016).

"The district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013)). "If the evidence is legally sufficient, we must find that the district court did not abuse its discretion in denying a motion for new trial." *Id.* (citing *Cobb v. Rowan Cos., Inc.*, 919 F.2d 1089, 1090 (5th Cir. 1991). We have held that it is "far easier" to show that a district court should have granted a motion for judgment as a matter of law than it is to show a district court abused its discretion by not granting a new trial. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

## III. Discussion

### A. Motion for Judgment as a Matter of Law

A district court may enter judgment as a matter of law (JMOL) at the close of trial "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *See James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted) (quoting FED. R. CIV. P. 50(a)). "[Rule 50] allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 2521, at 240 (2d ed. 1995)). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n.6 (1962)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge." *Id.* at 150–51 (internal quotation marks omitted) (quoting *Liberty Lobby*, 477 U.S. at 255). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. We have explained that we

> "will reject a verdict in those instances when, despite considering all the evidence in the light and with all reasonable inference most favorable to the verdict, we find no evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial discretion could arrive at the same conclusion."

*Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996) (quoting *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1356 (5th Cir. 1993)).

Westfall argues that defendants failed to present any evidence to support a finding that their search of the Westfall residence was lawful; thus, she argues, there was insufficient evidence to support the jury's verdict, and the district court erred in denying her motion for JMOL. Instead, she asserts

that the district court violated the mandate of this court in its opinion remanding the case for trial by allowing defendants to state at trial that their visit to the residence was not a "knock-and-talk" but rather an "active investigation." She claims that the mandate of this court on remand included a finding that the visit was in fact a knock-and-talk. Thus, she claims that defendants' arguments that their search of the Westfall residence was lawful as part of an active investigation are inapposite to the actual question: whether the search was lawful subsequent to a lawful knock-and-talk investigation. Westfall asserts that the undisputed evidence shows that the encounter was an unlawful knock-and-talk, and thus that the search was unlawful. As a result, she argues that the jury's verdict, misled as it was by this new argument, constituted jury nullification, and that the district court should have granted her motion for JMOL. Because we disagree that the district court violated this court's mandate by refusing to constrain defendants to the argument that their encounter with the Westfalls was a knock-and-talk, we affirm.

### i. The Mandate Rule

A corollary to the law-of-the-case doctrine is the "mandate rule." *Kapche v. City of San Antonio*, 304 F.3d 493, 496 (5th Cir. 2002). Under the mandate rule, a district court must "'implement both the letter and the spirit of the [appellate court's] mandate.' and may not disregard the 'explicit directives' of that court." *Id.* (quoting *United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998) (*abrogation on other grounds recognized in United States v. Farias*, 481 F.3d 289, 291 (5th Cir. 2007)). Put another way: "The mandate

rule requires a district court on remand to effect [this court's] mandate and to do nothing else." *Gen. Univ. Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (internal quotation marks omitted) (quoting *United States v. Castillo*, 179 F.3d 321, 329 (5th Cir. 1999) (*rev'd on other grounds by Castillo v. United States*, 530 U.S. 120 (2000)). The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* (quoting *United States v. Castillo*, 179 F.3d at 329). An issue is tacitly decided only when its disposition is a "necessary predicate[] to the ability to address the issue or issues specifically discussed" in the appellate court's opinion. *The Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 225 (5th Cir. 2001). When a case reaches this court for the second time, we review de novo whether any of the district court's actions on remand from the prior appeal were foreclosed by the mandate rule. *Id.* at 227.

## ii. Knock-and-Talks

In *Westfall 1*, this court held that multiple genuine issues of material fact precluded summary judgment. 903 F.3d at 539. We held that one of those material issues, as is relevant here, was whether a reasonable officer could have concluded that they were performing a duty or exercising lawful authority when they entered and searched Westfall's home. *Id.* at 546-47 The district court granted summary judgment on this issue to defendants, finding that it had been reasonable for the officers to conclude that they had been given valid consent before conducting their search of the Westfall residence. We explained that the "'knock and talk' nature of the officers'

initial interaction with Westfall puts into question their ability to have obtained valid consent." *Westfall*, 903 F.3d at 545.

We have recognized the knock-and-talk strategy as "a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). But "[t]he purpose of a 'knock and talk' is not to create a show of force, nor to make demands on occupants, nor to raid a residence. Instead, the purpose . . . is to make investigatory inquiry or, if officers reasonably suspect criminal activity, to gain the occupants' consent to search." *United States v. Gomez-Moreno*, 479 F.3d 350, 355 (5th Cir. 2007) (*overruled on other grounds by Kentucky v. King*, 563 U.S. 452 (2011)). When no one answers the door despite knocking, "officers should . . . end[ ] the 'knock and talk' and change[ ] their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance." *Id.* at 356. Where officers continue an illegal search or seizure, any consent given after that fact is invalid, unless it was an independent act of free will. *Id.* at 357.

Under this analysis, we found in *Westfall 1* that "given the fact that [the officers] went to her home at 2:00 a.m., continued to knock on Westfall's door after she closed it, called her home repeatedly, looked through the windows of her home, and walked around her property, even after she closed the door, [this] may have been an unreasonable search that rendered any subsequent consent invalid." *Westfall*, 903 F.3d at 545 (footnotes removed) (citing *United States v. Hernandez*, 392 F. App'x 350, 351–53 (5th Cir. 2010) (holding that "[t]he district court should have acknowledged that the

officers' knock- and-talk conduct was an unreasonable search" and that there was no valid consent where the woman who allegedly gave consent did not initially answer the door, and the officers then circled her trailer, banged on doors and windows, shouted that they were present, and broke the glass pane of her door before she answered it).  We stated: "If the district court determines that the officers' search was unreasonable for this reason, it would then need to consider whether Westfall's alleged consent was an independent act of free will.  The district court did not consider this argument and should do so on remand." *Id.* at 545–46 (internal citations removed).

But despite Westfall's arguments, *Westfall 1* did not *hold* that the officers' encounter with Westfall was in fact a knock-and-talk.  At that point, the case had reached this court as an appeal of a grant of summary judgment to defendants.  Thus, as it must when reviewing summary judgment orders, the court in that opinion "accept[ed] all well-pleaded facts as true and view[ed] th[e] facts in the light most favorable to the plaintiff[]." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).  The court thus accepted as true the presentation of the encounter in question as a knock-and-talk.  It did not rule that its rendition of the facts, presented in the light most favorable to Westfall, mandated the district court to limit defendants to arguing based on that set of facts at trial.  The categorization of this encounter as a knock-and-talk was not part of this court's mandate on remand, and the district court

thus did not err in allowing defendants to testify that their encounter with Westfall was part of an active investigation.

### iii. Sufficiency of the Evidence

Having determined that the district court did not violate this court's mandate on remand, it is clear that the district court did not err in denying Westfall's motion for JMOL.  Where an issue has been resolved by a jury, the moving party can prevail on a motion for JMOL only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict[.]" *Poliner*, 537 F.3d at 376 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Dixon*, 330 F.3d at 313–14.  It is not the role of this court to judge the credibility or weight of the evidence; in fact, we must disregard all evidence in favor of the moving party that the jury is not required to believe.  *Reeves*, 530 U.S. at 151.  Here, the jury found that defendants had not violated any of Westfall's constitutional rights.  As the district court explained in its order denying Westfall's motion for JMOL,

> [a]t a minimum, the jury heard testimony that in response to Officer Anderson's request to enter the home with somebody else who knew where the marijuana was, Westfall responded "William, go get it."  In context, the jury was permitted to draw an inference that Westfall was consenting to an officer entering the home with William to retrieve the marijuana.  Further, Westfall's statement that she didn't "want you people to go up there," while she walked towards Anderson in an "aggressive manner" could have plausibly been disregarded by the jury because of the competing interpretation of the

No. 21-10159

statement, that Westfall said she was "the one who said you could up there," which would indicate valid consent.

Thus, the district court held that legally sufficient evidence existed to support the jury's verdict on the ground that a reasonable officer could have believed that he had consent to conduct the search. We agree.

## B. Motion for a New Trial

As we have determined that there was a legally sufficient evidentiary basis for a reasonable jury to have entered a verdict for defendants, Westfall cannot show that there is an absolute absence of evidence to support the jury's verdict. Thus, she has failed to show that the district court abused its discretion in denying her motion for a new trial.

## IV. Conclusion

For the foregoing reasons, we AFFIRM.